UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION G-13-54 |
| UNKNOWN POTENTIAL CLAIMANTS, *et al.*, | § § § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is claimant American Commercial Lines, LLC's ("ACL") motion for summary judgment. Dkt. 86. ACL seeks a finding that Marquette Transportation Company Gulf-Inland, LLC ("Marquette") owes ACL complete defense and indemnity for all claims brought against it by Anthony Ladner pursuant to the terms of a towage agreement in effect between ACL and Marquette at the time of Ladner's alleged injuries. *Id.* After reviewing the motion, the responses, the towing agreement, and the applicable law, the court is of the opinion that the motion should be GRANTED in part and DENIED in part.

### I. BACKGROUND

As brief background, Ladner was employed by Marquette working aboard a vessel when he allegedly tripped and fell overboard after his shoelace became entangled in a broken wire which was lying on the deck of an ACL barge that Marquette was towing. Dkt. 86-1 at 2. ACL had entered into a towing agreement with Marquette to tow ACL's barge. Dkt. 86-1. Ladner subsequently filed suit in state court against Marquette and ACL for his injuries. Dkts. 1-1, 13 at 2. Marquette then filed this limitation action, and the court granted an injunction on Ladner's state court case and ordered

all claims to be filed in the limitation action. Dkts. 1, 10. Accordingly, ACL filed its claim against Marquette in the limitation action alleging that, under the towing contract, Marquette had a duty to defend and indemnify ACL for Ladner's claim. Dkt. 13 at 4. Ladner also filed his personal injury claim in the limitation action. Dkt. 15.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

*A.   Contentions of the Parties*

ACL contends that the towing agreement is a maritime contract, and therefore the agreement and its indemnity provisions should be interpreted under maritime law. Dkt. 86-1 at 6. ACL claims that the indemnity section contained in the towing agreement clearly and unequivocally states that Marquette is to indemnify and hold ACL harmless for any injuries sustained by any of Marquette's employees. *Id.* at 8. Because Ladner is a Marquette employee, the injuries arose out of the towing

agreement, and the agreement provides that ACL is to be defended and indemnified for sole or concurrent negligence or fault on the part of ACL, strict liability, or the unseaworthiness of any barge or barges by ACL and "howsoever caused," ACL asserts that it should be completely indemnified by Marquette. *Id.* ACL also asserts that it is entitled to reimbursement of all of its attorney's fees incurred in the defense of Ladner's claims because the indemnity language also states that Marquette must pay ACL's costs, damages, or expenses. *Id.*

Marquette does not dispute that it owes ACL defense and indemnity for every claim made by Ladner, other than claims made for gross negligence and punitive damages. Dkt. 115 at 1. ACL responds that Ladner does not have a viable punitive damages claim against it, but if there were a gross negligence finding against ACL, the agreement language is broad enough to cover it. Marquette only disputes indemnity for Ladner's claims of gross negligence or punitive damages because the agreement does not expressly include gross negligence and punitive damages claims. Dkt. 111 at 2. Marquette asserts that under maritime law, a party cannot agree to contractually indemnify another party for its own gross negligence or punitive damages, and a party can only agree to contractually indemnify another entity from gross negligence if it was specifically and expressly included in the parties' contract. *Id.* Finally, Marquette asserts that ACL is not entitled to recover its attorney's fees and costs because it has not provided any evidence of its attorneys' fees and costs, or categorized what fees and expenses relate to defending claims of ordinary negligence as opposed to that for the defense of gross negligence and punitive damages claims. *Id.* at 9.

**B.    Substantive Law**

Resolution of this motion depends on the interpretation of an indemnity provision within a maritime contract. "The interpretation of a contractual indemnity provision is a question of law."

*Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009). And, "[a] maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Id.* (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984)). "A court should construe an indemnity clause to cover all losses which reasonably appear to have been within the parties' contemplation." *Weathersby*, 752 F.2d at 956 (internal quotation omitted).

*C.      Analysis*

At the outset, the court notes that it is effectively agreed between the parties that Marquette must defend and indemnify all claims against ACL for compensatory damages, except for gross negligence . Therefore, the court finds that the ordinary negligence and unseaworthiness claims are covered under the indemnity agreement and defense and indemnity are due to ACL as to Ladner's negligence and seaworthiness claim. Further, ACL is entitled to costs, expenses and attorney's fees for defending Ladner's negligence and unseaworthiness claim, though it still must prove those costs and fees.

As to the gross negligence claims, the court must review the indemnity clause in the towing agreement. The relevant language is:

> [Marquette] shall protect, defend, indemnify and hold harmless ACL Group (as defined in Section 8) and ACL's sub-contractors from and against **all claims**, suits, losses, liabilities, demands, costs, damages or expenses, **regardless of how caused**, resulting from loss of or damage to [Marquette's] property or equipment, or that of its contractors and subcontractors, including but not limited to the barges, and also for **bodily injury**, illness, loss of services or wages, or death of the employees of [Marquette] or its affiliated companies, contractors or subcontractors **which in any manner arise from**, grow out of, or be connected with, directly or indirectly, this Agreement, including loading and offloading the barges, **even if there is sole or concurrent negligence or fault on the part of the ACL** Group or ACL's sub-contractors, or strict liability, or any unseaworthiness of any barge or barges

> **howsoever caused**. The extent of this indemnity shall not in any way be limited by the insurance required by this Agreement.

Dkt. 86-2 at 22 (emphasis added).

This language is not dissimilar from an indemnity clause this court reviewed in a prior case where it concluded that the clause was broad enough to encompass gross negligence, even though it did not explicitly include gross negligence. *See Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590, 609 (S.D. Tex. 2011). In *Energy XXI*, the indemnity clause covered "negligence or any other means, relationship or cause without limitation whatsoever." *Id.* (internal quotation omitted). The court found that this language was broad enough to cover gross negligence.

In this case, the indemnity provision specifically covers negligence. Dkt. 86-2 at 22. It also covers *all* claims, *regardless* of how caused, which arise in *any manner* out of the agreement, even if there is negligence or fault on the part of ACL, *however* it is caused. *Id.* While the clause does not use the wording "without limitation," it does cover all claims and mentions three different times that it does not matter how the claims or damages were caused. The language is broad enough to cover gross negligence.

The next question is to what extent the indemnity clause is enforceable in regard to gross negligence. In the *Energy XXI* case, the court determined that to the extent that the indemnity clause could be interpreted to encompass gross negligence, it was unenforceable under public policy. *Id.* at 611. It is important to note that the court's decision regarding the enforceability of the indemnity clause for gross negligence in *Energy XXI* was in regard to punitive damages only because the contract at issue had a mutual release between the parties for all compensatory damages. Read in this light, this court's conclusion in *Energy XXI* is not inconsistent with the conclusion in *In re Oil*

*Spill*, a case that considered the enforceability of an indemnity clause that covered gross negligence as to compensatory and punitive damages. 841 F. Supp. 2d 988 (E.D. La. 2012).

In *In re Oil Spill*, Judge Barbier looked not only at the purpose of an indemnity agreement, various cases and secondary sources on the subject, and public policy, but also the reciprocal nature of the indemnity clause at issue and the comparative bargaining power of the parties to the contract. *Id.* at 1000–03. The court determined that the indemnity clause could cover gross negligence for compensatory damages, but not punitive damages. *Id.* The court determined that contractual indemnity did not extend to punitive damages because the purpose of punitive damages, which is to punish a party for its egregious conduct and deter others, would be defeated if it could be passed off via contractual indemnity. *Id.* at 1003.

Here, the contract has reciprocal indemnity provisions in a "knock-for-knock"-type agreement where each party covers the claims involving their own employees, which maintains "an incentive for [each party] to avoid grossly negligent conduct." *Id.* at 1001. Further, there is also no evidence that Marquette and ACL are novices in the maritime arena or otherwise have unequal bargaining power. *Id.* Given that the indemnity provision language is broad enough to cover gross negligence, to the extent there is a valid claim for punitive damages, Marquette does not owe ACL indemnity for punitive damages, if any, that may be awarded. *Id.*; *Energy XXI*, 787 F. Supp. 2d at 612.

## IV. CONCLUSION

For the foregoing reasons, ACL's motion for summary judgment (Dkt. 86) is GRANTED as to Ladner's claims for negligence and unseaworthiness seeking compensatory damages, and DENIED as to punitive damages.

It is so ORDERED.

Signed at Houston, Texas on May 4, 2015.

_____
Gray H. Miller
United States District Judge